2011 ND 92

Jonathan Thomas KASOWSKI,
Petitioner and Appellant

v.

DIRECTOR, NORTH DAKOTA DE-
PARTMENT OF TRANSPORTA-
TION, Respondent and Appellee.

No. 20100232.

Supreme Court of North Dakota.

May 12, 2011.

Jesse N. Lange (argued), Fargo, ND, for petitioner and appellant.

Douglas B. Anderson (argued), Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Jonathan Thomas Kasowski appealed the revocation of his driving privileges by the North Dakota Department of Transportation ("DOT") and the district court judgment affirming the revocation. Kasowski's driving privileges were revoked for four years after he refused to submit to a chemical test for intoxication. The DOT hearing officer's finding that Kasowski decided against speaking to an attorney was supported by the record. Accordingly, Kasowski was not denied a reasonable opportunity to speak to an attorney before his decision on whether to submit to a chemical test for intoxication. We affirm.

I

[¶ 2] West Fargo Police Officer Tyler Williams stopped a vehicle driven by Kasowski after observing the vehicle cross over the center line on Interstate 94 several times without signaling. While speaking to Kasowski, Officer Williams detected the odor of alcohol and observed Kasow-

ski's glossy eyes, slurred speech, and slow mannerisms. Officer Williams asked Kasowski if he had been drinking alcohol, and Kasowski responded that he had not been drinking. Officer Williams asked Kasowski to exit the vehicle and go to Officer Williams' patrol vehicle. Officer Williams performed a pat-down search on Kasowski before he directed Kasowski to the back seat of the patrol vehicle. Kasowski sat in the back seat of the patrol vehicle, which was locked from the outside so he could not leave without assistance from someone outside the vehicle. Officer Williams asked Kasowski if he had been drinking alcohol and told him not to lie. Kasowski stated he wanted to speak to his attorney about that. Officer Williams read North Dakota's implied consent advisory, requested Kasowski submit to an S–D5 breath test, and arrested Kasowski when he refused. Officer Williams did not conduct any field sobriety tests because he believed Kasowski would refuse to perform the tests after requesting to speak to an attorney. In the sally port of the Cass County jail, the issue of Kasowski calling an attorney was raised, and Kasowski said something about not being able to get a hold of an attorney at that time of night. There was no further discussion about Kasowski contacting an attorney. Officer Williams repeated the North Dakota implied consent advisory, and Kasowski refused to submit to an Intoxilyzer, an evidentiary chemical test for intoxication.

[¶ 3] An administrative hearing was held before a DOT hearing officer, and the only testimony given was by Officer Williams. The hearing officer concluded Kasowski was not under arrest when he first requested to speak to an attorney and had no right to speak to an attorney at that time. The hearing officer found Kasowski, while under arrest at the jail, decided against attempting to contact an attorney. The hearing officer concluded Kasowski was not denied the reasonable opportunity to speak to an attorney and revoked Kasowski's driving privileges for refusing to submit to a chemical test for intoxication. The district court affirmed the hearing officer's decision.

[¶ 4] On appeal, Kasowski argues he was effectively under arrest when he requested to speak with an attorney and was denied his statutory right to speak with an attorney before deciding whether to submit to an Intoxilyzer. The DOT argues Kasowski was subjected to an investigatory detention when he requested to speak to an attorney, was not under arrest, and had no right to speak to an attorney at that time. Kasowski also argues the hearing officer erroneously found he decided against contacting an attorney while sitting in the patrol vehicle in the sally port of the jail. The DOT argues Officer Williams reasonably interpreted Kasowski's statements as a decision against trying to contact an attorney before deciding whether to submit to the Intoxilyzer.

II

[¶ 5] This Court reviews the administrative revocation and suspension of driving privileges under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Lange v. Dep't of Transp.*, 2010 ND 201, ¶ 5, 790 N.W.2d 28 (citing *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 6, 768 N.W.2d 485). We must affirm the administrative agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. Our review of an administrative agency's decision is limited:

> We do not make independent findings of fact or substitute our judgment for that of the agency when reviewing an administrative agency's factual findings. We determine only whether a reasoning mind reasonably could have determined the factual conclusions reached were proved by the weight of the evidence from the entire record. If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision. [W]e . . . review questions of law de novo.

*Lange,* at ¶ 5 (quoting *Abernathey,* at ¶ 7) (quotations omitted).

■■■ [¶ 6] A person arrested for driving under the influence ("DUI") has a limited statutory right under N.D.C.C. ch. 39–20 to consult with an attorney before deciding whether to submit to a chemical test for intoxication. *Eriksmoen v. N.D.*

*Dep't of Transp.,* 2005 ND 206, ¶ 8, 706 N.W.2d 610 (citing *Kuntz v. State Highway Comm'r,* 405 N.W.2d 285, 290 (N.D. 1987)). "The right to consult with an attorney before taking a chemical test is derived from N.D.C.C. § 29–05–20." *Id.* "If a person arrested for driving under the influence is asked to submit to a chemical test and responds with a request to speak with an attorney, the failure to allow the arrested person a reasonable opportunity to contact an attorney prevents the revocation of her license for refusal to take the test." *Id.* at ¶ 9 (citing *Wetzel v. N.D. Dep't of Transp.,* 2001 ND 35, ¶ 12, 622 N.W.2d 180). This Court has articulated a standard for reviewing whether an arrestee was given the reasonable opportunity to consult with an attorney:

> This Court gives deference to administrative agency's factual findings and does not substitute its judgment for that of the agency. However, the question of whether a person has been given a reasonable opportunity to consult with an attorney is not purely a question of fact; instead, it is one of both law and fact. Mixed questions of law and fact are reviewed under a de novo standard.

> This Court has repeatedly held that defendants must be afforded a reasonable opportunity to consult with counsel before deciding whether to submit to a chemical test. The failure to allow a DUI arrestee a reasonable opportunity to consult with a lawyer after the arrestee has made such a request prevents the revocation of his driver's license for refusal to take a chemical test. There are no bright line rules for determining whether a reasonable opportunity to consult with an attorney has been afforded; rather, the determination of whether a reasonable opportunity has been provided turns on an objective review of the totality of the circumstances.

*Lies v. N.D. Dep't of Transp.*, 2008 ND 30, ¶¶ 9–10, 744 N.W.2d 783 (citations omitted).

### III

[¶ 7] Kasowski argues he was effectively under arrest when he made his first request to contact an attorney, and his statutory right to speak to an attorney had already attached.

[¶ 8] Whether Kasowski was effectively under arrest when he requested to contact an attorney is an issue because, prior to arrest, there is no statutory right to speak to an attorney about whether to submit to a chemical test for intoxication. *City of Mandan v. Leno*, 2000 ND 184, ¶¶ 10–11, 618 N.W.2d 161. The right to contact an attorney arises only after arrest and requires a police officer to provide the arrestee with a reasonable opportunity to contact an attorney before deciding whether to submit to the ultimate evidentiary test. *Id.* at ¶ 11. The right to speak to an attorney before submitting to a chemical test for intoxication does not apply to the decision whether to submit to an on-site screening test not used for evidence. *Id.*

[¶ 9] After making the traffic stop, Officer Williams noticed Kasowski had slow mannerisms, glossy eyes, and slurred speech. Officer Williams detected the odor of alcohol while talking to Kasowski. Officer Williams "had [Kasowski] exit his vehicle, so he could come back to my patrol vehicle." Kasowski had difficulty walking to the patrol vehicle because he was "a little off balance." Officer Williams performed a pat-down search of Kasowski before Kasowski entered the patrol vehicle. Officer Williams testified that he directed Kasowski to the back seat on the passenger side of the patrol vehicle. The back seat was locked when Kasowski was seated there, and he could not leave the patrol vehicle unless someone assisted him

from outside the vehicle. Officer Williams could not remember if he went back to Kasowski's vehicle, but at some point Officer Williams entered the driver's side front seat of the patrol vehicle. Officer Williams asked Kasowski if he had been drinking alcohol, said something like "[n]ow don't lie to me because you lied to me earlier," and Kasowski "stated that he wanted to talk to his ... his attorney about that." Officer Williams did not respond and read Kasowski North Dakota's implied consent advisory and asked him to submit to an S–D5 breath test. Officer Williams did not ask Kasowski to perform any field sobriety tests because he "assumed that he wasn't going to perform the other tests after I ... I ... he wanted to talk to an attorney." After Kasowski refused to take the S–D5 breath test, Officer Williams asked Kasowski to exit the vehicle, placed handcuffs on Kasowski, and advised him he was under arrest.

[¶ 10] Upon these facts, the DOT hearing officer concluded Kasowski was not under arrest when he requested to speak to an attorney. Assuming, but without deciding, for purposes of this opinion that the hearing officer's finding was erroneous, we nevertheless affirm the revocation. Officer Williams and Kasowski later discussed Kasowski contacting an attorney while at the jail. The DOT hearing officer found Kasowski's communications were reasonably understood by Officer Williams to mean he decided against contacting an attorney, and he was not denied the reasonable opportunity to contact an attorney.

### IV

[¶ 11] Kasowski argues he "again mentioned a lawyer at the jail," and Officer Williams should have given him the opportunity to speak to an attorney. The DOT argues the hearing officer was correct in relying on Officer Williams' testimony and

finding Kasowski decided against contacting an attorney.

[¶ 12] Officer Williams testified that after asking Kasowski to submit to an Intoxilyzer at the jail, Officer Williams "advised him that we would have . . . that he could . . . he would be able to make a phone call to contact his attorney. . . ." Officer Williams testified Kasowski said "he wouldn't be able to get a hold of him this time of night." Officer Williams could not remember exactly what was said in the conversation, but repeatedly testified Kasowski said he would not be able to reach an attorney at that time of night. Contacting an attorney was not brought up again. The DOT hearing officer found:

> [T]he facts are clear through the conversation between [Kasowski] and Officer Williams, [Kasowski] decided against speaking to an attorney before deciding to refuse the chemical test. From the conversation, Officer Williams understood that [Kasowski] no longer wanted to speak to an attorney because it was too late and he would not be able to get a hold of an attorney any way. The issue of an attorney never came up again. At no time did [Kasowski] request to use a telephone nor did he request a phone book to contact an attorney.

The hearing officer's findings are supported by the evidence on the record.

[¶ 13] Kasowski relies on this Court's opinion in *Baillie v. Moore*, 522 N.W.2d 748 (N.D.1994), to support his argument that his request for an attorney and the conversation at the jail were sufficient to invoke his right to a reasonable opportunity to contact an attorney. In *Baillie*, we stated:

> that if a DUI arrestee, upon being asked to submit to a chemical test, responds with any mention of a need for an attorney—to see one, to talk to one, to have one, etc.—the failure to allow the arrestee a reasonable opportunity to contact an attorney prevents the revocation of his license for refusal to take the test. . . . Our intent is to set forth a "bright line" test to determine when an arrestee must be allowed a reasonable opportunity to consult with an attorney before deciding whether to take a chemical test. If the arrestee responds with any *affirmative* mention of a need for an attorney, law enforcement personnel must assume the arrestee is requesting an opportunity to consult with an attorney and must allow a reasonable opportunity to do so.

522 N.W.2d at 751 (emphasis added). Kasowski's first request to speak to an attorney at the scene of the traffic stop was an "affirmative mention" of a need for an attorney by an arrestee. However, the hearing officer found Kasowski's subsequent communication was reasonably understood by Officer Williams to mean Kasowski changed his mind. The hearing officer's findings are supported by the record. Accordingly, Kasowski was offered a reasonable opportunity to speak to an attorney, but decided not to take it.

[¶ 14] We have stated in other DUI cases that an arrestee making an ambiguous statement suffers the consequence of that ambiguity. *Lange*, 2010 ND 201, ¶ 7, 790 N.W.2d 28 (discussing ambiguity regarding a request to take an independent chemical test for intoxication); *Maisey v. N.D. Dep't of Transp.*, 2009 ND 191, ¶ 20, 775 N.W.2d 200 (discussing ambiguity concerning a refusal to take a chemical test for intoxication). "An arrestee cannot complain about a law enforcement officer's reasonable interpretation of the arrestee's ambiguous statements." *Lange*, at ¶ 7. If Kasowski intended to invoke his right to contact an attorney, his statements to Officer Williams at the jail to that effect were

ambiguous, and he could not rely on those communications to invoke his statutory right to contact an attorney.

## V

[¶ 15] Even if Kasowski was effectively subjected to a de facto arrest when questioned, based on the record and the DOT hearing officer's findings on Kasowski's communications with Officer Williams at the jail, Officer Williams reasonably understood Kasowski decided against speaking to an attorney. Kasowski was not denied the reasonable opportunity to contact an attorney. We affirm the revocation of Kasowski's driving privileges.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.